

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00045-CV

TAYTON SETH FINLEY                                              APPELLANT

V.

MARGUERITE BREANNE FINLEY                                       APPELLEE

----------

### FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 233-470831-10

----------

## MEMORANDUM OPINION[1]

----------

[1]*See* Tex. R. App. P. 47.4.

# I. INTRODUCTION[2]

In twenty-seven issues,[3] Appellant Tayton Seth Finley appeals both the final decree of divorce dissolving his marriage to Appellee Marguerite Breanne Finley (Lilley)[4] and the final protective order entered against him. Because the record reveals that Lilley did not plead for a permanent injunction, we will dissolve the trial court's permanent injunction and modify the final decree to omit any reference to the permanent injunction. We will affirm the granting of the

---

[2]This case was originally submitted without oral argument on September 28, 2011, before a panel consisting of Justice Dauphinot, Justice Gardner, and Justice McCoy. After submission, the court was notified that a petition for bankruptcy had been filed, which suspended the appeal, and on January 11, 2012, the court issued an order staying the case. The bankruptcy case was closed on November 14, 2013; was reopened on May 15, 2014; and was closed again five days later on May 20, 2014. The motion to reinstate was not filed until November 18, 2014. This court granted Appellant's motion to reinstate; resubmitted the case without oral argument; and assigned this case to a new panel, consisting of Justice Dauphinot, Justice Walker, and Justice Meier. We are concerned that the delay between the December 29, 2010 divorce decree and our disposition of this appeal over four years later has caused many of the issues concerning the parties' divorce, child support, and property division to become stale.

[3]Appellant's brief lists issues one through thirty, but the issues are not consecutively numbered, omitting numbers fifteen through seventeen. After setting forth his twenty-seven issues, Finley abandons his numbered issues and instead raises arguments related to the following: (1) the protective order, (2) the child support, (3) the attorney's fees, (4) the permanent injunction, (5) the property division, and (6) the motion for new trial. We therefore address these six issues.

[4]At the conclusion of the divorce trial, the trial court granted Marguerite's request that her last name be changed back to her maiden name of Lilley, which is the name by which we refer to her in this opinion.

2

divorce and the remainder of the final decree as modified, and we will affirm the final protective order.

## II. BACKGROUND

Finley and Lilley married in 2005 and had a son in 2008. In late December 2009, Finley committed family violence when he broke into his mother's home by throwing a brick through the glass French doors, tried to take his son from Lilley, and punched Lilley in the face. The following month, Lilley filed a petition for divorce and an application for a protective order, both of which Finley answered. The trial court specially set the final trial for November 30, 2010.

On November 11, 2010, Finley's attorney filed a motion for withdrawal of counsel, citing her inability to effectively communicate with Finley. The trial court granted the motion to withdraw on November 17, 2010; noted that Finley had been informed that the final trial was set for November 30, 2010; and gave Finley's attorney fifteen days to provide Finley with all documents relating to his case. Also on November 17, Finley filed an unverified motion for continuance without attaching an affidavit, and the motion was impliedly overruled.

Finley did not appear for trial on November 30, 2010. After hearing testimony from Lilley, the trial court granted the divorce and awarded Lilley current child support of $479 per month; retroactive child support of $5,269; the 2009 tax refund; the marital residence; sole managing conservatorship; a protective order; a permanent injunction; and her attorney's fees. The trial court awarded Finley his personal property and gave him until December 15, 2010, to

3

remove his personal property from the marital residence. Finley filed a motion for new trial and requested findings of fact and conclusions of law. He then perfected this appeal.

### III. PROTECTIVE ORDER

In his first issue, Finley argues that the final protective order was entered in error. Finley contends that he received inadequate notice that Lilley's application for a protective order would be heard at the final trial, which denied him due process; that he should have been appointed an attorney for the protective order hearing; and that the evidence is insufficient to support the protective order.

### A. Mootness

Because the final protective order expired on November 30, 2012, our first determination must be whether Finley's appeal from the final protective order is moot. The general rule is that a case becomes moot, and thus unreviewable, when it appears that a party seeks to obtain relief on some alleged controversy when in reality none exists. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). If a case becomes moot, the parties lose their standing to maintain their claims. *Id.*

Texas law, however, recognizes a collateral consequences exception to the mootness doctrine. *FDIC v. Nueces Cnty.*, 886 S.W.2d 766, 767 (Tex. 1994). The collateral consequences exception has been applied when prejudicial events have occurred that will continue to stigmatize the person long after the judgment has ceased to operate. *In re Cummings*, 13 S.W.3d 472, 475 (Tex. App.— Corpus Christi 2000, no pet.).

4

Appeals of expired protective orders issued for family violence often fall into this collateral consequences exception because although such orders may ultimately expire, the social stigma attached to them generally does not. *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 822–23 (Tex. App.—Fort Worth 2007, no pet.), *overruled on other grounds by Iliff v. Illiff*, 339 S.W.3d 74 (Tex. 2011). Moreover, there are attendant legal consequences to being the subject of such a protective order. *Id.* at 823 (citing Texas Family Code section 153.004(f) and noting that the family code requires courts to consider a history of domestic violence when determining child custody).

Under the collateral consequences exception, the expiration of the protective order in this case does not render Finley's appeal from the final protective order moot. *See id.* We will therefore review the substance of Finley's challenges to the protective order.

## B. Notice

Finley argues that he was denied due process because he received inadequate notice that Lilley's application for a protective order would be heard at the final trial.

A court may render a protective order that is binding on a respondent who does not attend a hearing if the respondent received service of the application and notice of the hearing. Tex. Fam. Code Ann. § 85.006 (West 2014). Under the presumption of regularity of judgments, we presume the recitations in the trial

5

court's judgment are correct absent any evidence to the contrary. *In re Guardianship of Winn*, 372 S.W3d 291, 298 (Tex. App.—Dallas 2012, no pet.).

Here, the final protective order recites that "Respondent, Tayton Seth Finley, although duly and properly cited, did not appear and wholly made default." The record reveals that on January 26, 2010, Finley was served with Lilley's application for a protective order and was given notice that the hearing on Lilley's application would occur on February 8, 2010. On February 8, 2010, the associate judge's report notes that the protective order hearing was extended until the reset date. On February 16, 2010, the hearing on the application for protective order was reset to February 24, 2010. The record does not contain a record or a report from any February 24 hearing. The application for a protective order was not mentioned at subsequent status conferences but appears to have been carried until the final trial. Finley admits that he had notice of the final trial and yet did not appear.

The Corpus Christi Court of Appeals dealt with a similar situation in *Cummings*. 13 S.W.3d at 475–76. In *Cummings*, both parties filed for a protective order and noticed hearings. *Id.* at 475. The initial hearing on the wife's protective order did not occur. *Id.* When the husband set a hearing on his motion for protective order for June 15, 1998, the wife asked for and received a continuance. *Id.* at 475–76. The wife then noticed July 17 as a hearing date for her application. *Id.* At the July 17 hearing, the husband asked the trial court to consider his application as well, but the wife insisted that she had not received

6

notice that the husband's application would be considered at that day's hearing. *Id.* at 476. The trial court indicated his desire to consider both applications in one hearing, but when the wife continued to resist, the trial court stated, "Okay. We'll start it and recess it then." *Id.* The wife began presenting evidence in support of her application, but the trial court recessed the hearing before she had finished. *Id.* When the case reconvened on July 22, the husband again asked to proceed with his application, and the wife resisted, arguing that the husband had never noticed a hearing date for his application. *Id.* The trial court found that the wife had sufficient notice of the hearing on the husband's application and proceeded with hearing both applications. *Id.* On appeal, the wife argued that the trial court erred by considering the husband's application at the July 22 hearing. *Id.* The Corpus Christi Court of Appeals held that even assuming the trial court did err, the wife failed to show how she was harmed by the error. *Id.*

In the case before us, even assuming that the trial court did err by hearing Lilley's application for a protective order on the same date as the final trial, Finley has failed to show how he was harmed by the error. Before reversing a trial court judgment, we must conclude that an error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. Tex. R. App. P. 44.1(a). Neither conclusion is warranted here. Finley does not argue that he would have appeared for the final trial had he known that the trial court was also hearing Lilley's application for a protective order. Nor does he argue in his brief what

7

witnesses he would have summoned, what their testimony would have been, or what other evidence he would have put on that would have led the trial court to reach a different conclusion.[5]  We hold that Finley has not demonstrated reversible error from any alleged lack of notice regarding the hearing on Lilley's application for a protective order.  *See Cummings*, 13 S.W.3d at 476.

## C.  Due Process

Finley also argues that he was denied due process with regard to the protective order.  We note that Finley did not raise this issue in his motion for new trial.  Moreover, due process requires that Finley be given the opportunity to be heard, but he waived that right by failing to attend the hearing.  *See Hunt v. State*, No. 03-11-00352-CV, 2012 WL 3793283, at *2 (Tex. App.—Austin Aug. 31, 2012, no pet.) (mem. op.).  We therefore hold that Finley was not denied due process.  *See id.* at *2–3 (holding that appellant's right to due process was not violated when he failed to attend hearing and default protective order was entered).

## D.  Right to Representation

With regard to Finley's argument that he had a right to be represented by an attorney at the hearing on Lilley's application for a protective order, we have previously held that there is no constitutional or statutory right to counsel in a protective order case.  *See Maki v. Anderson*, No. 02-12-00513-CV, 2013 WL

---

[5]We hold below that the evidence is sufficient to support the protective order.

8

4121229, at *6 (Tex. App.—Fort Worth Aug. 15, 2013, pet. denied) (mem. op.), *cert. denied*, 135 S. Ct. 76 (2014). Because Finley fails to show why our prior precedent was in error or how his situation is different, we are constrained by our prior precedent. *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630–31 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (stating that absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in statutory law, this court is bound by the prior holding of another panel of this court).

### E. Sufficiency of the Evidence

Finley's first issue also appears to challenge the sufficiency of the evidence to support the protective order, arguing that he had denied any basis for a protective order and had specifically denied Lilley's claims of criminal conduct.

Although there is a split among the courts of appeals, in this court we review appellate challenges to the granting of protective orders for sufficiency of the evidence, measured by legal and factual sufficiency contentions. *Schaban-Maurer*, 238 S.W.3d at 823. We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes

9

conclusively the opposite of a vital fact.  *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960).  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.  *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered.  *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

A trial court shall render a protective order if, after a hearing, it finds that family violence has occurred and is likely to occur in the future.  Tex. Fam. Code Ann. §§ 81.001, 85.001(b) (West 2014).  Family violence means an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or

10

sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself. *Id.* § 71.004(1) (West 2014).

Here, the record contains Lilley's uncontroverted testimony that during their separation, Finley broke into his mother's home, where Lilley and his son were staying, by throwing a brick through the glass French doors and tried to take their son from Lilley. When Lilley would not allow Finley to take their son, Finley grabbed Lilley's glasses off her face and punched her in the face, splitting her eye. We hold that the evidence is legally and factually sufficient to support the trial court's granting of Lilley's application for a protective order.[6] *See Schaban-Maurer*, 238 S.W.3d at 825; *see also Coffman v. Melton*, No. 14-13-00661-CV, 2014 WL 4377466, at *5 (Tex. App.—Houston [14th Dist.] Sept. 4, 2014, pet. denied) ("Evidence of past violence can constitute sufficient evidence that future violence is likely.").

Having decided against Finley on each of his arguments pertaining to the final protective order, we overrule Finley's first issue.

---

[6]Finley also asserts within his first issue that the trial court's granting of Lilley's application on November 30, 2010—ten months after it was filed—indicated a lack of urgency or necessity. Because we have held that the evidence is sufficient to support the trial court's granting of Lilley's application for a protective order and because Finley's assertion does not provide any avenue for relief, we need not address his assertion. *See* Tex. R. App. P. 47.1 (requiring appellate court to address every issue necessary for final disposition of appeal).

11

## IV. CHILD SUPPORT

In his second issue, Finley argues that the trial court abused its discretion when it entered the child support order. Finley appears to challenge the sufficiency of the evidence to support the trial court's calculation of current child support and retroactive child support.

### A. Standard of Review

A trial court has discretion to set child support within the parameters provided by the family code, and we will not disturb the trial court's child support order unless the complaining party shows a clear abuse of discretion. *Iliff*, 339 S.W.3d at 78; *see* Tex. Fam. Code Ann. §§ 154.121–.123 (West 2014). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles, or when it fails to analyze or apply the law correctly. *Iliff*, 339 S.W.3d at 78. Legal and factual sufficiency challenges are not independent grounds of error; rather, they are relevant factors in assessing whether the trial court abused its discretion. *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). When an appellant alleges that the trial court abused its discretion because the evidence was insufficient, this court employs a two-prong test: first, we must ask whether the trial court had sufficient information on which to exercise its discretion; and second, we determine whether the trial court abused its discretion by causing the child support order to be manifestly unjust or unfair. *Id.* The trial court does not abuse its discretion when its decision is based on conflicting

12

evidence or where some evidence of probative and substantive character exists to support the child support order. *Id.* We view the evidence in the light most favorable to the trial court's decision and indulge every reasonable presumption in favor of the trial court's judgment. *Id.*

## B. Child Support Calculations

Within his second issue, Finley argues that the trial court erred by relying on Lilley's testimony regarding his past financial aid to calculate his resources instead of utilizing the federal minimum wage as the basis for his resources.

### 1. Law on Calculating Child Support

The family code instructs the trial court to calculate net resources for the purpose of determining child support liability. Tex. Fam. Code Ann. § 154.062 (West 2014). There must be some evidence of a substantive and probative character of net resources in order for the trial court to discharge this duty. *Newberry*, 146 S.W.3d at 236. "Resources" is defined as various types of "income actually being received." Tex. Fam. Code Ann. § 154.062(b). In the absence of evidence of a party's resources, the court shall presume that the party has wages or salary equal to the federal minimum wage for a forty-hour week. *Id.* § 154.068 (West 2014). After determining a party's resources, the trial court shall deduct taxes and expenses for the cost of health insurance or cash medical support for the obligor's child ordered by the court under section 154.182; the amount ascertained after subtracting the preceding deductions from the party's resources equals the net resources available for child support. *Id.*

§ 154.062(d). The child support obligation is then determined by applying the statutory guidelines to the party's net resources. *Id.* § 154.125 (West 2014). The family code sets a guideline that an obligor who has two children should pay child support equal to twenty percent of the first $7,500 of his monthly net resources. *Id.*

## 2. Evidence at Trial

Here, Lilley testified that Finley was previously in medical school in Tennessee and that he had received between $35,000 and $40,000 in government and private loans each year when he was attending medical school. Lilley testified that Finley was "currently suspended" from medical school for behavioral problems but that he hoped to be readmitted to medical school. Lilley testified that Finley had not worked since they had separated in December 2009. Lilley asked the trial court to base the child support amount "on just whatever the minimum wage job is" or on $35,000. The trial court later asked Lilley whether Finley had received any other financial help, and she responded that in addition to the government loans and private loans he had received, his family had "been supporting him the past year." She said that they paid for his groceries, "running money," his car, and gas, and she estimated that the support totaled at least $500 per month. After hearing Lilley's testimony, the trial court based its child support orders on an annual income of $35,000; ordered Finley to pay $479 per month in current child support; and ordered Finley to pay retroactive child support in the amount of $5,269—eleven months' child support for the time since the

14

petition for divorce was filed in January 2010 to the trial in November 2010—to be paid at the rate of $300 per month.

### 3. Analysis

Lilley's testimony demonstrates that Finley had received monies from his family totaling at least $6,000 per year and from financial aid sources totaling $35,000 to $40,000 per year. Lilley's testimony regarding these amounts was undisputed. Finley was not in court and did not cross-examine Lilley or present any evidence regarding his past or present income or whether his receipt of loan or aid monies changed as a result of his suspension from medical school while he sought readmission. Because the duty to pay child support is not limited to an obligor's ability to pay from earnings but also includes his ability to pay from any and all sources that may be available, the trial court was entitled to base its child support calculation on the gifts that Finley had received from his family and the proceeds of his financial aid and private loans, which constitute resources within the meaning of section 154.062(b)(5). *See In re A.M.P.*, 368 S.W.3d 842, 849 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (stating that under the plain meaning of section 154.062, gifts are included in the calculation of net resources); *In re L.R.P.*, 98 S.W.3d 312, 313–14 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (holding that monetary gifts are "resources" within the meaning of section 154.062(b)(5)); *accord L.R.P.*, 98 S.W.3d at 315 (stating that trial court considered partial scholarship to be a resource and holding that scholarship was properly included among resources in setting child support). Viewing the

evidence in the light most favorable to the trial court's decision and indulging every reasonable presumption in favor of the trial court's judgment, we hold that the trial court had sufficient information on which to exercise its discretion[7] and that the trial court did not abuse its discretion by ordering Finley to pay monthly child support of $279, which was not manifestly unjust or unfair.  *See L.R.P.*, 98 S.W.3d at 315 (holding that trial court did not abuse its discretion in ordering college student to pay $400 per month to support his son); *see also Monroy v. Monroy*, No. 03-10-00275-CV, 2011 WL 3890401, at *5–6 (Tex. App.—Aug. 31, 2011, pet. denied) (mem. op.) (holding that trial court did not abuse its discretion by calculating child support based on ex-wife's undisputed testimony about appellant's former income and proceeds from real estate sales even though appellant was in jail at the time of the trial).

Finley also argues that the trial court abused its discretion by ordering payments of retroactive child support of $300 per month.  Our analysis set forth above for the current child support payments is equally applicable here.  In the absence of any affirmative evidence that Finley's receipt of the $6,000 per year

---

[7]Because there was evidence of Finley's resources, the trial court was not required to presume that Finley had income equal to the federal minimum wage for a forty-hour week.  *See* Tex. Fam. Code Ann. § 154.068 (stating that in the absence of *any* evidence of a party's resources, as defined in section 154.062(b), trial court shall presume that party had income equal to the federal minimum wage for a forty-hour week); *L.R.P.*, 98 S.W.3d at 314 (refusing to utilize the federal minimum wage presumption under section 154.068 because there was evidence of resources—father's payment of appellant's car insurance, car maintenance, cell phone, medical insurance, and medical bills were treated as in-kind gifts, and appellant's athletic scholarship—for calculating appellant's child support obligation).

from his family and of the $35,000 to $40,000 per year of financial aid ceased during the time the divorce was pending, and viewing the evidence in the light most favorable to the trial court's decision and indulging every reasonable presumption in favor of the trial court's judgment, we hold that the trial court had sufficient information on which to exercise its discretion and that the trial court did not abuse its discretion by ordering Finley to pay monthly retroactive child support of $300, which was not manifestly unjust or unfair. *See* Tex. Fam. Code Ann. § 154.131 (West 2014) (requiring courts to consider the obligor's net resources during the relevant time period in ordering retroactive child support); *Monroy*, 2011 WL 3890401, at *6 (holding that based on the evidence before it, trial court did not abuse its discretion by ordering appellant to pay retroactive child support of $618 for seventeen of the months of separation).

### C. Required Findings

Within his second issue, Finley also argues that the trial court abused its discretion by failing to make the required findings under section 154.130.

In rendering an order of child support, the trial court is required to make findings if a party files a written request with the court not later than ten days after the date of the hearing, a party makes an oral request in open court during the hearing, or the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines under section 154.125. Tex. Fam. Code Ann. § 154.130(a) (West 2014). If findings are required under section 154.130, the trial court shall state whether the application of the

guidelines would be unjust or inappropriate and shall state the net resources of the obligor per month, the net resources of the obligee per month, the percentage applied to the obligor's net resources for child support, and the specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under section 154.125. *Id.* § 154.130(b).

Finley contends that his January 28, 2011 request for findings triggered the trial court's duty to make the required findings regarding net resources. *See id.* However, in order to trigger this duty, the party must request these findings no later than ten days after the date of the hearing that resulted in the order. *Id.* § 154.130(a)(1). Because the trial court held the hearing that resulted in the child support order on November 30, 2010, Finley's January 28, 2011 request was untimely.[8] *See id.*

Even without a proper request, if the child support amount varies from the amount computed by applying the percentage guidelines in the family code, the

--------

[8]Finley contends that his request was effective because he filed it within the court's thirty-day plenary period. However, even under rule 296, he would have been required to submit his request no later than twenty days from the date on which the trial court signed the judgment. *See* Tex. R. Civ. P. 296; *Harmon v. Harmon*, 879 S.W.2d 213, 216 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (deciding that husband was not entitled to findings under the family code or under rule 296 when he requested them more than twenty days after the trial court signed the default judgment), *abrogated on other grounds by Ratisseau v. Ratisseau*, 44 S.W.3d 695 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd). The judgment here was signed on December 29, 2010, making any request for findings due by January 19, 2011, in order to comply with rule 296. Therefore, even under this theory, Finley's request would have been untimely.

trial court must state specific reasons for ordering that amount of child support. *Id.* § 154.130(a)(3), (b)(4). However, we find no indication in the record that the child support award was outside the percentage guidelines. We therefore hold that the trial court was not required to make findings under section 154.130. *See id.* § 154.130; *Deltuva v. Deltuva*, 113 S.W.3d 882, 886 (Tex. App.—Dallas 2003, no pet.) (op. on reh'g) (holding that trial court was not required to make child support findings because the written request was filed more than ten days after the hearing).

Having decided against Finley on each of his arguments pertaining to the child support orders, we overrule Finley's second issue.

## V. ATTORNEY'S FEES

In his third issue, Finley argues that the trial court abused its discretion by awarding attorney's fees that were not reasonable, necessary, or equitable.

### A. Law on Awarding Attorney's Fees in a Suit Affecting the Parent-Child Relationship (SAPCR)

The trial court has broad discretion in determining the amount of attorney's fees in a SAPCR. *See* Tex. Fam. Code Ann. § 106.002 (West 2014) (stating that it is within the trial court's discretion to award reasonable attorney's fees in a SAPCR). To support a request for reasonable attorney's fees, testimony should be given regarding the hours spent on the case, the nature of preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates. *In re Marriage of C.A.S.*, 405 S.W.3d 373, 387 (Tex. App.—Dallas 2013,

no pet.). While the nature and extent of the legal services performed is typically expressed by the number of hours worked and the hourly rate charged, there is no requirement that both facts be in evidence to make a determination of attorney's fees. *In re M.M.S.*, 256 S.W.3d 470, 479 (Tex. App.—Dallas 2008, no pet.); *cf. In re Marriage of Pyrtle*, 433 S.W.3d 152, 167 (Tex. App.—Dallas 2014, pet. denied) (statute providing for attorney's fees in dissolution of marriage cases does not specifically require attorney's fees to be determined under the lodestar method).

## B. Sufficiency of Evidence to Support Attorney's Fees Award

Finley argues that Lilley's trial counsel failed to testify regarding the number of hours spent on the case. Here, the record contains testimony from Lilley's trial counsel that he had been licensed since 1977; that he had been board certified since 1983; that his hourly rate of $350 was reasonable and necessary; that the issues in this case were exacerbated due to Finley's lack of involvement in the child's life and due to extra hearings that would have been unnecessary if Finley had taken proper action; and that $17,500 in attorney's fees was reasonable and necessary in this matter. This testimony is sufficient to support the attorney's fee award. *See In re A.S.G.*, 345 S.W.3d 443, 451–52 (Tex. App.—San Antonio 2011, no pet.) (holding attorney's testimony sufficient to support fee award even though she "did not testify to her hourly rate or exact number of hours spent on the case, [but] she did specifically ask for $1,500 in

attorney's fees and explained to the trial court their necessity and reasonableness").[9]

Finley also argues in his third issue that the award of attorney's fees exceeds his assets and income. Finley cites no authority, and we have not located any, for his proposition that the award of attorney's fees in a suit for divorce is limited to the amount of a party's assets and income.[10]

## C. Segregation of Attorney's Fees Not Requested

Additionally, Finley argues that the trial court erred by failing to segregate the attorney's fees. Finley contends that Lilley is an attorney and participated in the preparation of some of the documents, but he does not specify how the

---

[9]Finley notes that on August 26, 2010, the trial court partially divided the parties' $11,920 tax refund and allowed payment of $4,000 to each party's attorney for attorney's fees. Finley contends that in awarding attorney's fees of $17,500 in the final decree, the trial court failed to take into account any former payments applied. Because Finley points to no evidence showing that the trial court did not take into account any former payments, and because we have held that the evidence is sufficient to support the trial court's award of attorney's fees, we overrule Finley's argument. *See Parker v. Parker*, 897 S.W.2d 918, 935 (Tex. App.—Fort Worth 1995, writ denied) (overruling argument because appellant failed to provide appellate court with sufficient record references to confirm that trial court did not take into account any attorney's fees that appellant had paid), *overruled on other grounds by Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998).

[10]We note that the attorney's fees were awarded in the final decree; no attorney's fees were assessed in the final protective order. *Compare* Tex. Fam. Code Ann. § 106.002 (giving trial court broad discretion in assessing attorney's fees in a SAPCR), *with id.* § 81.005(b) (West 2014) (stating that in setting the amount of attorney's fees in conjunction with a protective order, trial court shall consider the income and ability to pay of the person against whom fee is assessed).

attorney's fees should have been segregated. Nor did he request that the trial court segregate the attorney's fees; therefore, he failed to preserve this issue for review. *See* Tex. R. App. P. 33.1(a); *Moroch v. Collins*, 174 S.W.3d 849, 871 (Tex. App.—Dallas 2005, pet. denied) (holding that issue challenging trial court's failure to segregate attorney's fees was not preserved because appellant did not request segregation of attorney's fees in the trial court). We hold that the trial court did not err by failing to segregate the attorney's fees.

### D. Attorney's Fees Related to Protective Order

Finley further argues in his third issue that some of the attorney's fees awarded in the final decree of divorce "may have" been attributable to the protective order and should not be taxed to him because the protective order was entered in error. However, we held above that the protective order is supported by sufficient evidence and that the trial court did not abuse its discretion by granting Lilley's application for a protective order. Moreover, Finley points to no evidence that the attorney's fees awarded in the final decree related to the final protective order.

We therefore overrule Finley's third issue.[11]

---

[11]The concluding sentence of Finley's third issue states, "Therefore, the trial court erred in awarding attorney fees as necessaries or as child support subject to a wage withholding order." However, none of the arguments that precede this concluding sentence challenge the award of attorney's fees as "necessaries," nor is there any challenge to the wage withholding order. We therefore hold that Finley has failed to adequately brief this argument. *See* Tex. R. App. P. 38.1(i) (requiring arguments to have appropriate citations to authorities); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284

In his fourth issue, Finley argues that the trial court abused its discretion by including a permanent injunction in the final decree because Lilley's pleadings did not request such relief.

When reviewing a judgment granting a permanent injunction, the standard of review is clear abuse of discretion. *Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376, 384 (Tex. App.—Fort Worth 2002, pet. denied). "[A] permanent injunction must not grant relief which is not prayed for nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity." *Holubec v. Brandenberger*, 111 S.W.3d 32, 39 (Tex. 2003).

Here, Lilley's first amended petition for divorce requests only a temporary restraining order and a temporary injunction. Although Lilley proceeded at the trial as if she had pleaded for a permanent injunction, she had not, nor had she requested the trial court to grant a trial amendment to add a request for a permanent injunction. A permanent injunction cannot stand in the absence of pleadings requesting such relief, the granting of a trial amendment to add a request for a permanent injunction, or trial of the issue by consent.[12] *See In re*

---

(Tex. 1994) (discussing long-standing rule that issue may be waived due to inadequate briefing).

[12]Lilley does not claim that the issue was tried by consent but instead argues that she requested "injunctive relief" in her first amended petition and her

23

*A.A.N.*, No. 02-13-00151-CV, 2014 WL 3778215, at *2–3 (Tex. App.—Fort Worth July 31, 2014, no pet.) (mem. op.).  Because Lilley did not plead for a permanent injunction, because she did not make a trial amendment adding a request for a permanent injunction, and because the issue was not tried by consent, we hold that the trial court abused its discretion by including a permanent injunction in the final decree.  *See id.*; *In re N.W.*, No. 02-12-00057-CV, 2013 WL 5302716, at *11 (Tex. App.—Fort Worth Sept. 19, 2013, no pet.) (mem. op.); *Falor v. Falor*, 840 S.W.2d 683, 687 (Tex. App.—San Antonio 1992, no writ) (dissolving the permanent injunction because petitioner requested only a temporary restraining order in her pleadings); *see also Westchester Fire Ins. Co. v. Nuckols*, 666 S.W.2d 372, 375 (Tex. App.—Eastland 1984, writ ref'd n.r.e.) (stating that "[t]here can be no trial by consent on issues decided by a default judgment").  We therefore sustain Finley's fourth issue, and we dissolve the permanent injunction.

## VII.  PROPERTY DIVISION

In his fifth issue, Finley argues that the trial court failed to make a just and right property division.

### A.  Access to Separate Property Located within Marital Residence

Finley argues that the trial court's property division was not just and right because the final decree contained no provision that granted Finley access to Lilley's residence to obtain his separate property and because the final protective

---

application for protective order.   Neither document requested a permanent injunction.

24

order hampered his access to this residence. Finley, however, fails to appreciate the distinction between Lilley's residence and the marital residence. The final decree granted Finley access to the marital residence for a limited time to allow him to retrieve any of his separate property that remained there. In contrast, the final protective order prohibited Finley from coming within a certain distance of Lilley's residence, the location of which the trial court agreed to keep confidential. The marital residence was not Lilley's residence; Lilley testified that the marital residence was "just sitting there," that it had a lockbox on it, and that she planned to sell it. Because the final protective order did not limit Finley's ability to access his separate property located at the marital residence and because the final decree specifically granted Finley temporary access to the marital residence before it was sold, Finley has not shown that the trial court's property division was not just and right.

Finley also argues that the trial court's property division was not just and right because the final decree required him to remove his personal property from the marital residence by December 15, 2010, even though the final decree was not signed until December 29, 2010. Finley argues that the impossibility of acquiring his belongings resulted in the forfeiture of his interest in "some personal property." Even assuming that it was error for the trial court to include a December 15, 2010 deadline in the December 29, 2010 final decree, Finley fails to detail what items of separate property he forfeited and their value to show that the resulting property division was not just and right. *See generally Hinton v.*

25

*Burns*, 433 S.W.3d 189, 201 (Tex. App.—Dallas 2014, no pet.) (stating that burden is on party challenging property division to show that division was so disproportionate and thus unfair that it constituted an abuse of discretion); *Zeptner v. Zeptner*, 111 S.W.3d 727, 740 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh'g) (stating that a just and right division does not have to be equal; it need only be equitable). We therefore hold that Finley has failed to show harm from the alleged failure to retrieve his separate property from the marital residence. *See* Tex. R. App. P. 44.1(a).

### B. Value of Community Assets

Finley also argues in his fifth issue that the trial court erred in dividing the community property because it used values that were not in evidence. Finley, however, does not explain what values the trial court used that were not in evidence; instead, he directs us to exhibit two, which is entitled "Inventory and Appraisement of Marguerite Breanne Finley." During the divorce proceeding, the trial court admitted exhibit two into evidence. Having no reason to believe that the trial court based the division of community property on any other values, we conclude that the trial court based its division on the values shown on exhibit two that was admitted during the trial.

Finley further argues that the trial court was "mistaken in admitting the Petitioner's Sworn Inventory & Appraisement pursuant to Parker" and therefore erred by dividing the community property based on Lilley's inventory and

26

appraisement because those values did not reflect the values on the date of the divorce.

The value of community assets is generally determined as of the date of divorce or as close to that date as possible. *Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.). However, we have held that the facts of a particular case may necessitate some other basis for the property division and that this decision should be left to the discretion of the trial judge to avoid the inequities that could result by establishing a bright-line rule. *See Parker*, 897 S.W.2d at 932. Whichever approach we take, the cases that discuss the proper date of valuation discuss it in the context of the choice being between the date of the divorce and the date on which the property is subsequently divided when these events occur on different dates. *See, e.g.*, *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 836–37 (Tex. App.—Texarkana 1996, writ denied) ("Generally, community assets are to be evaluated as of the time of the divorce, and subsequent increases in value are separate property."); *Parker*, 897 S.W.2d at 932.

Here, the trial court did not face this decision because it made the property division on the same date that it granted the divorce. Finley nonetheless argues that the trial court should have used values that were ascertained closer to the date of the final trial on November 30, 2010, rather than those that Lilley submitted on February 17, 2010. Even under the stricter general rule, the requirement is that trial courts must use a value that was determined as close to

27

the date of divorce as possible. *Quijano*, 347 S.W.3d at 350. Here, the trial court ordered both parties to submit a sworn inventory and appraisement of all separate and community property, but only Lilley submitted an inventory to the trial court. Lilley's inventory and appraisement was thus the best evidence presented to the trial court regarding the value of the parties' property. *See id.* The trial court therefore did not abuse its discretion by dividing the property based on the most recent values that the trial court had before it. *See id.* (holding that using values from six-month-old bank statement did not render evidence insufficient to support trial court's assessment of value in checking account and did not render trial court's division of property manifestly unjust and unfair because appellant did not appear and present his own evidence).

### C. Division Based on Personality Factors

Finley additionally argues that "to the extent that the division of personal property was based on a lack of courtroom decorum which is alleged to have occurred in another location, the trial court should not have based a division of marital property on personality factors" because Lilley "did not plead for a just and right division based on 'erratic behavior in court.'" Finley appears to tie his argument to the trial court's order requiring him to pay the entire amount of attorney's fees. We have reviewed the trial court's award of attorney's fees above and have found no abuse of discretion.

Having decided against Finley on each of his arguments pertaining to the property division, we therefore overrule Finley's fifth issue.

28

## VIII. MOTION FOR NEW TRIAL

In his sixth issue, Finley appears to argue that the trial court abused its discretion by denying his motion for new trial.  *See* Tex. R. App. P. 38.1(f), 38.9 (directing appellate courts to liberally construe briefs and address every issue fairly included within a point presented for review).  Finley contends that his failure to appear at the final trial on the petition for divorce was due to a mistake.

A default judgment should be set aside and a new trial granted when the defaulting party establishes that (1) the failure to appear was not intentional or the result of conscious indifference but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff.  *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009); *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939).  When a defaulting party moving for a new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial.[13]  *Lerma*, 288 S.W.3d at 926.

With regard to the first prong of the *Craddock* test, Finley's motion for new trial stated only the following:

> A new trial should be granted to Movant because this Court abused its discretion [by] permitting the withdrawal of counsel for Respondent on November 17, 2010[,] without allowing time for

---

[13]The *Craddock* test applies to no-answer and post-answer default judgments.  *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966).

29

substitution of counsel and not holding a hearing on Movant's request for a continuance of the trial setting on November 30, 2010.

Nowhere within or in addition to these conclusory allegations did Finley provide an excuse for his failure to appear. *See Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). Because Finley failed to satisfy the first prong of *Craddock*, we hold that the trial court did not abuse its discretion by overruling Finley's motion for new trial. *See Lerma*, 288 S.W.3d at 926. We therefore overrule the portion of Finley's sixth issue related to the denial of his motion for new trial.

Finley also argues within his sixth issue that the trial court abused its discretion by failing to rule on his motion for continuance.[14] Assuming, without deciding, that the trial court abused its discretion by failing to rule on his motion for continuance, Finley failed to show how he was harmed. *See* Tex. R. App. P. 44.1(a). Although Finley argues that the trial court's failure to rule on his motion for continuance caused him to mistakenly believe that his motion had been granted and that the trial date had been continued, he does not cite any authority

---

[14]Although we find no express ruling denying the motion for continuance, the trial court's act of proceeding with the trial and rendering judgment against Finley in the face of his pending motion for continuance constitutes an implicit denial of his motion for purposes of our review of this complaint. *See* Tex. R. App. P. 33.1(a)(2)(A); *Carter v. MacFadyen*, 93 S.W.3d 307, 310 n.2 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (deciding that the dismissal of a party's claims at trial constituted an implicit denial of the party's motion for continuance); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 114 (Tex. App.—Waco 1999, no pet.) ("[T]he trial court's granting of Bank One's summary judgment creates an inference that the court implicitly overruled Williams's motion for continuance.").

for the proposition that a motion is impliedly granted while it is pending. If anything is implied from the trial court's failure to rule on his motion, it is that his motion was denied. *See In re T.G.*, No. 03-02-00090-CV, 2002 WL 31769031, at *2 (Tex. App.—Austin Dec. 12, 2002, no pet.) (not designated for publication) (holding that trial court's failure to rule on a motion for continuance, even if improper, caused no harm and that trial court implicitly denied the motion by holding the hearing that appellant had requested to be postponed). Moreover, Finley did not verify his motion for continuance or support it with an affidavit. *See* Tex. R. Civ. P. 251 (requiring motion for continuance to be supported by affidavit). If a motion for continuance is not verified or supported by affidavit, we will presume that the trial court did not abuse its discretion by denying the motion for continuance. *See Moreno v. Silva*, 316 S.W.3d 815, 818 (Tex. App.—Dallas 2010, pet. denied). We therefore hold that the trial court did not abuse its discretion by implicitly denying Finley's motion for continuance. *See id.* Accordingly, we overrule the portion of Finley's sixth issue related to his motion for continuance.

Finley further argues in his sixth issue that the trial court abused its discretion by allowing his trial counsel to withdraw and providing a deadline after the trial date for his trial counsel to forward Finley his file. When a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. *See Villegas v. Carter*, 711 S.W.2d 624, 626–27 (Tex. 1986); *Moreno*, 316

S.W.3d at 818. Here, Finley had almost two weeks to secure new counsel. Finley does not argue that this was not enough time to obtain an attorney or for an attorney to prepare for trial, nor does he argue or point to anything in the record to demonstrate that he had tried to hire a new attorney.[15] *See Moreno*, 316 S.W.3d at 818 (concluding that the trial court did not abuse its discretion, in part, because nothing in the record showed that the appellant had tried to hire an attorney after his attorney withdrew). We therefore hold that the trial court did not abuse its discretion by granting Finley's attorney's motion to withdraw.[16] *See id.* We therefore overrule the remainder of Finley's sixth issue.

## IX. CONCLUSION

Having sustained Finley's fourth issue, we dissolve the trial court's permanent injunction and modify the final decree to omit any reference to the permanent injunction. Having overruled Finley's second, third, fifth, and sixth issues, we affirm the granting of the divorce and the remainder of the final decree

---

[15]The only specific error of which Finley complains is that the trial court's order gave Finley's trial attorney fifteen days to forward trial documents to Finley when only thirteen days remained before trial. Even if this constituted an abuse of discretion, Finley does not argue that his trial attorney waited fifteen days or any length of time to deliver the documents. Finley therefore has not shown any reversible error by the trial court. *See* Tex. R. App. P. 44.1(a).

[16]To the extent that Finley argues in one sentence that he was denied due process because his attorney was allowed to withdraw, he did not raise this issue in the trial court and therefore did not preserve this issue for review. *See* Tex. R. App. P. 33.1(a); *In re D.T.M.*, 932 S.W.2d 647, 652 (Tex. App.—Fort Worth 1996, no writ) ("Even constitutional arguments are waived at the appellate level if issues were not before the trial court.").

as modified.  Having overruled Finley's first issue, we affirm the final protective order.

PER CURIAM

PANEL:  WALKER, DAUPHINOT, and MEIER, JJ.

DELIVERED:  January 22, 2015