**Guillermo QUIJANO Jr., Appellant,**

v.

**Marita QUIJANO, Appellee.**

**Nos. 14–09–01074–CV, 14–10–00567–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 28, 2011.

Carl J. Selesky, Sara Razavi, Houston, for appellant.

Martha Bourne, Jeremy Patrick Heallen, Houston, for appellee.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

MARTHA HILL JAMISON, Justice.

In these companion appeals, appellant Guillermo Quijano, Jr. challenges (1) a final decree of divorce, dissolving his marriage to appellee Marita Quijano and dividing their marital assets; and (2) an amended Qualified Domestic Relations Order (QDRO) issued by the trial court to effect a lump sum child support obligation. Respecting the final decree, Guillermo raises a single issue contending that the trial court did not have sufficient evidence of the value of the marital estate to render a just and right division of the property. Respecting the QDRO, Guillermo raises a single issue contending that the trial court's order was void as a matter of law because it altered the division of property contained in the decree. We overrule both issues and affirm both the decree and the order.

## I. Background

Guillermo and Marita were married on September 23, 1993. They had one child together. Marita filed for divorce on April 10, 2009. Although Guillermo was served with the lawsuit shortly thereafter, he never filed an answer. At the default judgment hearing on September 25, 2009, Marita offered into evidence a proposed division of marital property and an unsworn inventory, as well as supporting documentation for the figures contained therein. She also presented her own testimony in support of her proposed division. Marita's proposed division valued

the entire marital estate (community assets minus community liabilities) at $395,686.39. In the document, it was further proposed that Guillermo be awarded assets and liabilities totaling $109,793.15, and Marita be awarded assets and liabilities totaling $285,893.24.

In the final decree of divorce, signed September 25, the trial court dissolved the marriage between the parties, resolved possession and access issues dealing with the only child of the marriage, and substantially adopted Marita's proposed division of the marital assets. The court specifically awarded the marital home to Marita as well as various accounts and personal property, including the entirety of a Bank of America checking account. To Guillermo, the court awarded property in the Philippines as well as various accounts, including a Chase business checking account, a vehicle, and his business. The court also assigned various liabilities to each of the parties.

Regarding the 2008 and 2009 tax years, the court ordered the parties to file separate federal income tax returns listing only their respective individual earnings. This ruling further made it clear that each party was responsible for any tax liability resulting from their separate returns, and each would be entitled to any refund on said returns. The court further ordered each party to indemnify the other for any tax liability associated with the individual's tax returns for those years.

Additionally in the decree, the court found that a lump sum award of child support was appropriate under the circumstances of the case. For that express purpose, the court ordered that Marita receive $89,929.78, to be derived from three community property retirement accounts in Guillermo's name. The accounts in question were (1) a Roth Individual Retirement Account with TD Ameritrade, (2) a retirement plan with ING, and (3) a 401 K savings plan (designated "RCG Information Technology, Inc. 401 K Savings Plan") with The Prudential Insurance Company. At the same time as the final decree, the court issued two QDROs to effect the lump sum child support award. One of the QDROs was addressed to the ING account, and one was addressed to the Prudential account.[1] In both, the child was named as "Alternate Payee" and funds were to be transferred out of Guillermo's retirement accounts and into an account bearing the child's name. Regarding taxation of withdrawals, both stated: "Alternate Payee [the child] and Respondent [Guillermo] are each responsible for the appropriate taxability of distributions made to them, and are hereby ORDERED to report any distributions which either of them may receive on their respective federal income tax returns for the year received."

On October 23, 2009, Guillermo timely filed a motion for new trial. The trial court denied the motion but reformed the judgment to make it consistent with Marita's pleadings regarding conservatorship of the child.

Subsequently, the court issued an amended QDRO on March 17, 2010. This amended QDRO addressed only the Prudential account.[2] It again named the child as "Alternate Payee" and ordered funds transferred into an account bearing his name. Regarding taxes, however, the

---

1. A QDRO is not required for transferring funds from an IRA pursuant to divorce, so there was no need for a QDRO regarding the TD Ameritrade account. *See* 26 U.S.C. § 408(d)(6).

2. There is no explanation in the record or by the parties as to why no amended QDRO was filed respecting the ING retirement account.

amended QDRO stated as follows: "The Respondent [Guillermo], who is the Participant in the Plan referred to herein, shall be responsible for the taxability of any distribution to the Alternate Payee [the child] and is hereby ORDERED to report such distribution on his Federal Income Tax Return for the year in which it is received." Additionally, the amended QDRO provides that if the child, as Alternate Payee, were to die before receiving his full share of the funds, his designated beneficiaries would be paid a lump sum cash payment in the amount of the remaining funds. We will first address Guillermo's contentions regarding the final decree; we will then discuss his contentions regarding the amended QDRO.

## II. Appeal From Final Decree

In his appeal from the divorce decree, Guillermo raises a single issue contending that the division of the community estate contained in the decree should be reversed and remanded because the trial court did not have sufficient evidence at the default judgment hearing to effect a just and right division of the property. Specifically, Guillermo challenges the court's rulings in regard to four items, contending that: (1) the statements used to establish the values in a Chase bank account were too old; (2) the amount awarded from a Bank of America account was different than what the bank statement indicated was in the account; (3) the court improperly included estimated closing costs in valuing real property owned by the parties and granted to Marita; and (4) the court erred in dividing the community estate without knowing the value of the parties' tax liabilities for 2008 and 2009. We will discuss each item in turn.

### A. Standards of Review

■■■ The Texas Family Code requires the trial court in a divorce proceeding to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam.Code § 7.001. We review a trial court's division of property under an abuse of discretion standard. *Swaab v. Swaab*, 282 S.W.3d 519, 524 (Tex. App.-Houston [14th Dist.] 2008, pet. dism'd w.o.j.). A trial court has wide discretion in making a just and right division. *Walston v. Walston*, 119 S.W.3d 435, 438 (Tex.App.-Waco 2003, no pet.) (citing *Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex. 1975)). To convince an appellate court to disturb a trial court's property division, an appellant must show that the court below clearly abused its discretion by a division or an order that is manifestly unjust and unfair. *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex.App.-Houston [14th Dist.] 2009, no pet.).[3] Assessments of the legal and factual sufficiency of the evidence are not independent grounds for reversal, but they are relevant factors in assessing whether the trial court abused its discretion. *Id.*

■■■ The value of community assets is generally determined as of the date of divorce or as close to that date as possible. *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 880 (Tex.App.-Houston [14th Dist.] 2010, no pet.). If an appellate court determines that there is reversible error affecting the "just and right" division of the community estate, the court must remand the entire community estate for a new division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985); *Fischer–Stoker v.*

---

**3.** As will become apparent, Guillermo does not challenge the trial court's decision to award an unequal division of the marital estate but instead challenges whether the court below had adequate information on which to base its property division.

*Stoker,* 174 S.W.3d 272, 282 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

## B. Chase Bank Account

■ In the decree, the court awarded Guillermo the entirety of a business checking account at Chase Bank. Marita's inventory and proposed division of property indicated that this account contained a balance of $15,651.18. Guillermo complains on appeal that the documentation Marita provided to support this number, an account statement from Chase, was dated almost six months prior to the date of the default judgment hearing. The statement was dated March 31, 2009, and the hearing occurred on September 25, 2009. According to Guillermo, the staleness of this evidence prevented the trial court from effecting a just and right division of the marital estate.

As mentioned above, the value of community assets should generally be determined as of the date of divorce or as close to that date as possible. *See Van Heerden,* 321 S.W.3d at 880. That does not necessarily mean, however, that the trial court could not use figures from a six-month-old statement when that was the best evidence presented to the court regarding that account. Despite being served with the lawsuit, Guillermo did not appear and present his own evidence. Had he participated in the proceedings, he could have presented a more contemporaneous statement. The six-month gap by itself did not render the evidence insufficient to support the trial court's assessment of value in the Chase checking account and did not render the court's division of property manifestly unjust and unfair. *Cf. Handley v. Handley,* 122 S.W.3d 904, 908 (Tex.App.-Corpus Christi 2003, no pet.) (finding no abuse of discretion where court adopted figures from appraisal performed three months prior to trial); *Phillips v. Phillips,* 75 S.W.3d 564, 574 (Tex.App.-Beaumont 2002, no pet.) (finding no abuse of discretion where trial court used appraisal done eight months before trial). We find no merit in Guillermo's first contention.[4]

## C. Bank of America Account

■ Guillermo next contends that the trial court erred in calculating the value of a Bank of America business checking account. However, this argument appears

---

4. The case Guillermo primarily relies upon, *Mata v. Mata,* 710 S.W.2d 756 (Tex.App.-Corpus Christi 1986, no writ), is distinguishable. In *Mata,* the court of appeals stated that the trial court should have divided the money accounts as of the date of the final decree and not based on a date over three months earlier. *Id.* at 759. The court reversed the final decree, however, due to numerous valuation errors, which were unsupported by the uncontroverted evidence and which the court held rendered the division unfair, unjust, and inequitable. *Id.* at 760. *Mata,* therefore, does not clearly support the notion that use of a six-month-old bank statement, standing alone, renders a decree unjust and unfair.

Guillermo also cites the Corpus Christi court's unpublished opinion in *Suarez v. Suarez,* No. 13–04–00108–CV, 2006 WL 1194960 (Tex.App.-Corpus Christi May 4, 2006, no pet.) (not designated for publication). The court reversed in *Suarez* in part because the only evidence regarding certain assets in a post-answer default proceeding provided values for dates more than four years and more than five years before the hearing. *Id.* at *2. Other items listed as community assets had unknown values. *Id.* at *2 n. 2. It should also be noted that a dissenting justice in *Suarez* considered the evidence sufficient to find that the trial court did not err in its division of the property despite the rather stale and incomplete evidence of value. *Id.* at *6–7 (Castillo, J., concurring and dissenting). We need not decide in the present case whether we would agree with the *Suarez* majority or dissent on similar facts. The six-month-old evidence in the present case is qualitatively different than the four-and-five-year-old, and otherwise nonexistent, evidence in *Suarez.*

premised on a misreading of the court's decree.

In one of Marita's trial exhibits, the proposed division of property, she valued the contents of the Bank of America account at $5,182.33 and proposed awarding $5,000 of that amount to Guillermo and $182.33 to herself. Another exhibit, which included her inventory and an attached statement for the account, showed a balance of $182.33 as of June 18, 2009. Guillermo contends that this discrepancy means that he did not receive $5,000 that the trial court intended to award to him and, therefore, the trial court's intended percentage division of the marital estate was thwarted. The trial court's final decree, however, awarded the entirety of the account's contents to Marita with no mention of the dollar amount therein. Stated conversely, no portion of that account was awarded to Guillermo. Consequently, his argument that the trial court intended to award him $5,000 that did not actually exist in the account is without support in the decree.[5]

### D. Closing Costs

■ Guillermo additionally contends that the trial court abused its discretion in including closing costs in deriving a value for the parties' family home, which was awarded to Marita. In her inventory, proposed division of property, and testimony, Marita explained that she derived a value for the parties' home by taking the fair market value, as determined from the Harris County Tax Appraisal District ($458,107), and subtracting from that the amount owed on the mortgage (157,594.29) and closing costs of 8 percent ($36,645.56), for a total asset value of $263,867.15.

Guillermo appears to argue that in the absence of evidence that Marita was planning to sell the house, the trial court should not have included closing costs in valuing the property. There are, however, several problems with this assertion. To begin with, the trial court's final decree awarded the residence to Marita with no mention of its value. It is not clear from the record whether the court subtracted closing costs. Also, since Guillermo did not participate in the proceedings below, he was unable to make, and did not make, any objection to the method of valuation used. Therefore, such argument is waived. *See Houston R.E. Income Props. XV, Ltd. v. Waller Cnty. Appraisal Dist.,* 123 S.W.3d 859, 862–63 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (finding appellate argument regarding reliability of method used for valuing property was waived by failure to raise it in the trial court); *Olson v. Harris Cnty.,* 807 S.W.2d 594, 596 (Tex. App.-Houston [1st Dist.] 1990, writ denied) (finding objection that witness did not use proper method for estimating market value of property was waived by failure to timely assert it).

Furthermore, even on appeal, Guillermo provides no authority and no more than a conclusory argument that the method of valuation was improper or that evidence of a present intention to sell the property was required. We decline to make his argument for him. *See* Tex.R.App. P. 38.1(i) (requiring that an appellant's brief

---

**5.** At the conclusion of the default judgment hearing, the trial judge stated that he found "the property division that [Marita] requested supported by the exhibits the attorneys have prepared and submitted to the Court and as specifically set out again in the proposed decree is fair and reasonable and just to both parties." The trial court therefore clearly intended to grant the division of property contained in the proposed decree, as supported by the exhibits introduced during the hearing. To the extent there was a discrepancy in the exhibits regarding the contents of the Bank of America account, the court resolved the discrepancy by awarding the entirety of the contents to Marita.

"contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Brown v. Green,* 302 S.W.3d 1, 14 (Tex. App.-Houston [14th Dist.] 2009, no pet.) (declining to expand on party's conclusory arguments). Consequently, we find no merit in Guillermo's contention regarding closing costs.[6]

### E. Federal Income Tax Returns

 Lastly, Guillermo contends that the trial court erred in dividing the community estate in the absence of evidence establishing values for the parties' tax debt for 2008 and 2009. In its decree, the court ordered the parties to file separate returns for those years. Marita testified that the parties' 2008 tax return had not been prepared and filed by the time of the hearing because she and the parties' accountant needed information from Guillermo and he was not communicating with her. She requested that the court order each party to prepare and file separate 2008 and 2009 federal income tax returns, and the court did so in the decree.

In support of his position that the trial court could not have properly divided the community estate without evidence establishing values for the tax returns, Guillermo recites only the general proposition that a trial court should have evidence before it of all of the parties' property in order to make a just and right division. *See Finn v. Finn,* 658 S.W.2d 735, 747 (Tex.App.-Dallas 1983, writ ref'd n.r.e.). Guillermo does not cite any cases, and our

research has not revealed any, wherein a court has held that a community estate could not be divided where sums certain were not established for tax liabilities.[7] However, there are Texas cases in which courts appropriately assigned tax liability to one party or the other without knowing the exact amount of that liability. *See Kimsey v. Kimsey,* 965 S.W.2d 690, 695–96 (Tex.App.-El Paso 1998, pet. denied) (finding no manifest abuse of discretion where trial court divided tax liability equally between parties despite no evidence of amount of potential tax liability, but remanding in part because court failed to specify whether parties were to file jointly or separately); *Mullins v. Mullins,* 785 S.W.2d 5, 7–8 (Tex.App.-Fort Worth 1990, no writ) (holding trial court acted within its discretion in holding husband responsible for potential income tax liability incurred during marriage); *see also Young v. Young,* 168 S.W.3d 276, 286 (Tex.App.-Dallas 2005, no pet.) (holding trial court did not err in assigning responsibility of couples' income tax liability to husband where evidence indicated he had failed to report certain income); *Benedict v. Benedict,* 542 S.W.2d 692, 698 (Tex.App.-Fort Worth 1976, writ dism'd) (finding trial court acted within its authority in ordering husband responsible for entire estimated tax liability where he had failed to file tax returns for several years). Consequently, Guillermo has not demonstrated that the trial court abused its discretion in dividing the community estate without evidence establishing specific amounts for the parties' 2008 and 2009 tax liabilities.[8] Based on

---

6. We additionally note that even if Guillermo had established that an intent to sell was required before closing costs could be included in the property valuation, the trial court could have inferred such intent from Marita's testimony regarding closing costs.

7. Taking Guillermo's position to its logical conclusion, if the court could not effect a

property division without a specific value for the tax liability, he could indefinitely forestall division of the community estate by failing to cooperate in the preparation of the tax returns.

8. In his reply brief, Guillermo cites *Grossnickle v. Grossnickle,* in which the court stated that "where the question of future taxation

the foregoing analysis, we overrule Guillermo's sole issue challenging the final decree of divorce.

## III. Challenge to Amended QDRO

■ In his other appeal, Guillermo challenges the trial court's issuance of an amended QDRO governing transfer of funds from the Prudential retirement account in his name. As mentioned above, both the original and amended QDRO named the child of the marriage as the "Alternate Payee," and the amended QDRO expressly made Guillermo liable for any income taxes resulting from the transfer. In a single issue, Guillermo contends that the amended QDRO was void because it modified the division of property set forth in the divorce decree by (1) listing the child as Alternate Payee rather than Marita, (2) making Guillermo liable for the taxes rather than Marita, and (3) potentially awarding the remainder of the funds to Marita in the event the child were to die before distribution of all funds to him.

### A. Governing Law

After a trial court issues a divorce decree, it generally retains continuing subject-matter jurisdiction to enforce and to clarify the property division contained with the decree. *See* Tex. Fam.Code §§ 9.002, 9.008; *In re Provine*, 312 S.W.3d 824, 829–30 (Tex.App.-Houston [1st Dist.] 2009, no pet.). After its plenary power expires, however, the court may not alter, amend, or modify the substantive division of property in the decree. Tex. Fam.Code § 9.007; *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex.2003); *In re Provine*, 312 S.W.3d at 829–30. Guillermo specifically contends here that the trial court's issuance of the amended QDRO violated section 9.007 of the Texas Family Code, which provides as follows:

§ 9.007. **Limitation on Power of Court to Enforce**

(a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

(b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

. . . .

Tex. Fam.Code § 9.007.

■ The type of order in question here, a QDRO, is a species of post-divorce enforcement order. *Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (citing *Shanks*, 110 S.W.3d at 449, et al.). The purpose of

---

arises, a trial court errs in allowing a credit for a future tax figure that must be derived from speculation or surmise." 935 S.W.2d 830, 847 (Tex.App.-Texarkana 1996, writ denied). But as the First Court of Appeals recently recognized, section 7.008 of the Family Code now expressly authorizes courts to take into consideration whether a particular asset will be subject to taxation in the future. Tex. Fam.Code § 7.008; *Corrick v. Corrick*, 01–09–00656–CV, 2011 WL 664007, at *5 (Tex.App.-Houston [1st Dist.] Feb. 17, 2011, no pet. h.).

To the extent the analysis in *Grossnickle* still might be valid, it would have no application here. Guillermo and Marita already had incurred income taxes for 2008 at the time of divorce, so allocation did not violate the logic of *Grossnickle*. Furthermore, the parties could not legally have filed a joint return for 2009, the year in which their divorce became final, and could not have known the total tax liability before the end of the year. *See Kimsey*, 965 S.W.2d at 696 (citing 26 U.S.C. § 7703(a)).

a QDRO is to create or recognize an alternate payee's right, or to assign an alternate payee the right, to receive all or a portion of the benefits payable to a participant under a retirement plan. 26 U.S.C. § 414(p)(1)(A); 29 U.S.C. § 1056(d)(3)(B)(i).[9] Generally, it is limited to orders under State family law relating "to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a [retirement plan] participant." 26 U.S.C. § 414(p)(1)(B); 29 U.S.C. § 1056(d)(3)(B)(ii). "As with any post-divorce enforcement or clarification order, a QDRO may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment." *Gainous*, 219 S.W.3d at 107 (citing *Shanks*, 110 S.W.3d at 449, et al.).

## B. Alternate Payee

Guillermo first contends that the amended QDRO is void because the trial court erroneously made the child of the marriage the alternate payee in the amended QDRO, while the decree named Marita as the alternate payee. In doing so, according to Guillermo, the trial court changed the substantive division of property in the decree in violation of Family Code section 9.007. In the decree, however, the court did not simply award the funds from the Prudential account to Marita; the court ordered transfer of the funds in the decree as lump sum child support. The amended QDRO, in fact, does the same thing, expressly stating that the amounts to be transferred were "in the nature of child support." Both documents make it clear that the funds are child support. Thus, the amended QDRO does not change the

substantive division of property contained in the decree in violation of section 9.007.

Guillermo nonetheless emphasizes that the amended QDRO names the child as alternate payee instead of Marita. This designation, however, is in keeping with the statutory framework establishing the use of QDROs as methods for transferring funds from retirement plans incident to divorce. As described above, the relevant sections of the United States Code state that QDROs relate "to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a [retirement plan] participant." 26 U.S.C. § 414(p)(1)(B); 29 U.S.C. § 1056(d)(3)(B)(ii). Further, "[t]he term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 26 U.S.C. § 414(p)(8); 29 U.S.C. § 1056(d)(3)(K). The language of these provisions supports the conclusion that the designated alternate payee for a transfer of funds as child support should be the child for whose benefit the funds are intended. Since a child would not be entitled to alimony or marital property rights, the only reason a child could be an alternative payee under the provisions would be for the receipt of child support. As will be discussed below, this reading is consistent with the laws governing taxation of child support amounts and those pertaining to retirement plan transfers pursuant to a QDRO. In short, the designation of the child as alternate payee in the amended QDRO was proper and did not change the

---

9. The two code sections in question, 26 U.S.C. § 414 and 29 U.S.C. § 1056, contain several identical provisions relevant to this case.

substantive division of property contained in the decree.

## C. Tax Liability

■ Next, Guillermo asserts that the amended QDRO is void because in issuing it, the trial court impermissibly altered who was responsible for taxes on the transferred funds, thus effecting a change in the substantive division of the property. The decree itself, however, is silent as to who was responsible for taxes on the lump sum child support. Federal income tax law specifically excludes amounts received as child support from the taxable income of the receiving spouse. 26 U.S.C. § 71(c)(1). There is no similar exclusion of child support from the payor's taxable income. Thus, pursuant to the Internal Revenue Code, Guillermo would be responsible for any taxes on the child support payment.

Furthermore, making the child the alternate payee in the amended QDRO ensured that Guillermo was responsible for any taxes. Early distributions from a retirement plan may be subject to income tax to be paid by the distributee. *See* 26 U.S.C. § 402(a), (b)(2); *Smith ex rel. Estate of Smith v. U.S.*, 391 F.3d 621, 626 (5th Cir.2004). If the recipient of the distribution is an alternate payee spouse or former spouse under a QDRO, the recipi-

ent is treated as the distributee and is liable for any tax. *See* 26 U.S.C. § 402(a), (e)(1)(A); *Swoboda v. Swoboda*, 17 S.W.3d 276, 280 (Tex.App.-Corpus Christi 2000, no pet.); I.R.S., Dep't of the Treasury, Publication 575, Pension and Annuity Income 4 (2010). However, if the alternate payee is a child or other dependent of the retirement plan participant, then the participant is deemed to be the distributee and, thus, is responsible for any taxes. *See I.R.S.,* Publication 575, at 4.[10] Had Marita been named the alternate payee in the amended QDRO, it might have been unclear who was responsible for any taxes; she would have been liable for taxes as distributee of the funds but immune from taxes because the funds were designated as child support. By making the child the alternate payee, the trial court avoided this potential uncertainty. The amended QDRO is consistent with the decree.

## D. Contingent Disbursement

■ Lastly, Guillermo argues that issuance of the QDRO effected a change in the division of property because in it the trial court awarded the remainder of the funds to Marita in the event the child were to die before distribution of all funds to him. The amended QDRO explicitly provides that:

**10.** Section 402(a) of the Internal Revenue Code provides that "any amount actually distributed to any distributee [from a retirement plan] shall be taxable to the distributee." 26 U.S.C. § 402(a). Section 414(p)(8) permits a spouse, former spouse, child, or other dependent of a participant to receive distributions pursuant to a QDRO as an "alternate payee." *Id.* § 414(p)(8). Section 402(e)(1)(A) states that "[f]or purposes of subsection (a) ... an alternate payee who is the spouse or former spouse of the participant shall be treated as the distributee of any distribution or payment made to the alternate payee under a [QDRO]." *Id.* § 402(e)(1)(A). By expressly providing that when a spouse or former

spouse is the alternate payee, the spouse or former spouse is deemed the distributee and liable for taxes on the distribution, and not stating the same for a child or other dependent as alternate payee, congress expressed an intent that the plan participant remain the distributee, and be liable for any taxes, when the alternate payee is that participant's child or other dependent. *See* Stephen J. Blaylock, *Retirement Benefits: Tax Ramifications Reviewed and Applied*, J. Am. Acad. Matrim. Law. 1, 4 & n. 18 (1993); Peter C. Langdon, *The Disposition of Retirement Plan Assets in Divorce Proceedings Under Nebraska and Federal Law*, Creighton L.Rev. 741, 754–55 (1990).

If the [child] should die prior to receiving the full amount of the benefit assigned to him ... his beneficiary(ies), as designated on the appropriate form provided by the Plan Administrator (or in the absence of such designation, the beneficiary determined in accordance with the provisions of the Plan) shall be paid a lump sum cash payment in an amount equal to the entire balance of ... the amount assigned to the Alternate Payee....

Guillermo has not, however, provided any evidence regarding whether anyone has been named the child's beneficiary under the QDRO or the retirement plan.

Moreover, even if Marita was named sole beneficiary, it would not affect a change in the property division under the decree. The decree states that in the event of certain contingencies, including the possibility of the child's untimely death, Marita must repay one-half of any remaining child support funds to Guillermo.[11] Thus, the potential distribution of remaining funds to Marita as beneficiary under the QDRO would actually aid implementation of the decree's requirement that she then give half to Guillermo.

The amended QDRO issued by the trial court merely assisted in the implementation of the trial court's final decree of divorce and did not impermissibly amend, modify, or change the division of property contained in the decree. Accordingly, the order did not violate Family Code section 9.007. We overrule Guillermo's sole issue in his second appeal.

## IV. Conclusion

Having overruled Guillermo's two issues in these companion appeals, we affirm the trial court's final decree of divorce as well as its amended QDRO.

---

11. The decree specifically states as follows:
 In the event that a balance of the lump sum child support remains under [Marita]'s exclusive use and possession after the earliest occurrence of the one [sic] of contingencies above, then IT IS ORDERED that [Marita] shall pay to [Guillermo] one-half of the remaining balance of lump sum child support.