**Affirmed as Modified and Memorandum Opinion filed June 21, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00032-CV

---

### KACEY DEPRIEST, Appellant

### V.

### SIDNEY HEATH DEPRIEST, Appellee

---

**On Appeal from the 328th District Court
Fort Bend County, Texas
Trial Court Cause No. 17-DCV-242033**

---

### MEMORANDUM OPINION

Appellant, Kacey DePriest, appeals the trial court's final divorce decree. Appellant raises five issues on appeal. First, she argues that the trial court abused its discretion in denying her request for a jury trial. Second, she argues that the trial court erred in characterizing "stock units as the separate property" of appellee, Sidney Heath DePriest, because appellee judicially admitted that all property was community property. Third, she argues that the evidence is insufficient to characterize the stock units as appellee's separate property. Fourth, she argues the

trial court committed harmful error by "bifurcating the date of divorce from the . . . date used to determine the property." Fifth, she argues that the trial court erred in ordering a mineral interest reserved to appellee on real property awarded to appellant—a point appellee concedes. We affirm as modified.

## I. JURY DEMAND

Appellant complains the trial court committed reversible error when it denied her request for jury trial. Appellee argues the trial court did not abuse its discretion because there were no fact issues to be decided by the jury.

### A. General Legal Principles

To be entitled to a jury trial, a party must make a jury request in writing filed with the trial court within a reasonable time before the trial setting. Tex. R. Civ. P. 216(a). A jury demand filed more than thirty days before the actual trial is presumed timely. *See Crittenden v. Crittenden*, 52 S.W.3d 768, 769 (Tex. App.— San Antonio 2001, pet. denied) (citing *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex. 1991)). A party opposing the jury request "may rebut the presumption by showing a jury trial will: (1) injure the party, (2) disrupt the trial court's docket, or (3) impede the ordinary handling of the court's business." *Id.* "A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified." *Halsell*, 810 S.W.2d at 372.

### B. Background

The parties married in 1996. Appellant filed for divorce from appellee in May 2017. The parties agreed to wait to finalize the divorce until after their youngest child graduated from high school in June 2018. In May 2018, the parties began preparing for mediation and trial. Appellant filed a jury request on July 30,

2018. Appellee opposed the jury request and filed a motion to strike. Due to the request, the trial setting was postponed an additional month.

The trial court conducted a hearing on the motion to strike appellant's jury request in late September 2018. At the hearing, appellee's counsel represented that "[t]here is no issues (sic) of fact in this case. Everything is community property. The only thing to divide is two houses, retirement and personal property of the two parties." At the conclusion of the hearing, the trial court took the matter under advisement noting that "I don't intend to go forward with the jury. However, if we change our mind, then, it will definitely be next year before you can do a jury." The trial court stated that a jury trial would not be conducted until March or April 2019. After the hearing, the trial court granted appellee's motion to strike. There are no trial settings in the record.

The parties tried the case to the bench over two days, concluding the trial on February 5, 2019. At trial, appellant admitted multiple spreadsheets detailing the assets of the estate, including appellee's employment benefits. The employment benefits included three different types of stock that appellee's employer awarded him during the marriage: (1) stock options; (2) restricted stock units (RSU); and (3) performance stock units (PSU).[1] It was undisputed that the benefits were awarded during the marriage for work done during the marriage. At the time of trial and the divorce decree many of the benefits remained unvested. At trial there was no dispute about the number of "units" awarded to appellee or the dates that the awards would fully vest.

Appellant's exhibit A-7 indicated the dates each of the stock benefits was awarded with the corresponding date that each of the stock benefits would fully vest. This spreadsheet also included the "Total Grant Units" in one column and

---

[1] We refer to the benefits in the same manner as the parties.

3

"Vested Units" in another.  During appellee's testimony, the trial court interjected some questions to "everybody" regarding the restricted stock units on this spreadsheet, stating:

> We're talking about this restricted stock.  So I'm looking at this document right here so everybody can know —
>
> . . .
>
> THE COURT:     — which is Exhibit 51.  Looking at the restricted stocks units.  Let's take a look at the stocks awarded 2-2 of 2016.
>
> [APPELLEE]:     Those were the ones that just vested, and they are now in our . . . account.
>
> THE COURT:     Right.  There's 1830 units.  Those — I have that listed as those are being granted on February 2, 2019.  And I show that because they have already vested, that the entire 1,830 shares would be community property.  Does everybody — counsel do the two of you agree with me on that?
>
> [Both counsel agree]
>
> . . .
>
> THE COURT: And it would be my inclination . . . I want to take another award from these [RSUs] I'm going to take the one with 644 units that was awarded on 2-6 of 2018.  That does not vest until February 6, 2021.
>
> . . .
>
> THE COURT: . . . [I]t appears that the community would only own about 214 of those shares, with 429 of those shares being the separate property of [appellee], due to the fact if we based the date of the divorce on February 6, 2019, that those shares have only . . . there's another two years to go before they vest. . . . if they get divorced today, the community should get 214 and 2/3rds of those shares.  Do you lawyers agree with me on that?
>
> . . .
>
> [APPELLANT'S COUNSEL]:  Maybe — I might be off a line here. . . .
>
> . . .

4

THE COURT: . . . [T]hat portion of those 644 is going to be [appellee's] separate property shares. I want to make certain, counsel, that we are all on the same page on that.

After more discussion on the record, the trial court concluded that "what I'm planning on doing is saying to [appellee's employer] that [appellant] is awarded a percentage of the community shares of all of these stocks." The trial court again asked whether appellant agreed and whether there were any objections regarding how the stock benefits would be split by the trial court. Appellant did not object, did not indicate that appellee had failed to disclose any separate property interest to be decided at trial, and did not bring up her jury request.

The parties agreed on the grant date, vest date, and the number of units awarded to appellee. The parties further agreed that it made sense to value the stocks as units instead of monetarily because the stock price fluctuated widely throughout any given day because they were publicly traded. In her exhibit A-1 admitted at trial, appellant proposed a split of the vested stock benefits, with sixty percent going to appellant and forty percent going to appellee. Appellant made no proposal for the split of the non-vested stock units.

At the conclusion of the trial, the trial court took the matter under advisement. On February 12, 2019, the trial court rendered an order granting the divorce and dividing the community estate. In the final divorce decree the trial court divided the community interest in the stock benefits, sixty percent to appellant and forty percent to appellee. The remaining unvested units were awarded to appellee as his separate property.

## C.    Analysis

Assuming without deciding that the trial court abused its discretion in striking the jury demand, appellant has failed to show that a material fact issue was

contested at trial. Even assuming appellee admitted in his inventory and at the hearing on the motion to strike that there was only community property at issue,[2] it was appellant's burden to object to the admission of any evidence that would defeat the judicial admission that there was only community property at issue in the divorce. *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983) ("The party relying on his opponent's pleadings as judicial admissions of fact, however, must protect his record by objecting to the introduction of evidence contrary to that admission of fact and by objecting to the submission of any issue bearing on the fact admitted."). Because appellant did not object to the admission of such evidence, appellant has waived the right to rely on the admission. *See id.* at 768–69 ("Assuming for the sake of argument that . . . Musick's pleadings do admit [a disputed fact], [plaintiff] has nevertheless waived its right to rely on the admission."); *see also Rolls v. Rolls*, No. 03-14-00435-CV, 2016 WL 284373, *2 n.4 (Tex. App.—Austin Jan. 14, 2016, no pet.) (mem. op.) ("Even if we viewed Otis's inventory as a possible judicial admission, that would mean that Susan could have objected to evidence of the separate nature of the [insurance] policy. She did not do so, and we cannot ignore that the undisputed evidence, introduced by Susan herself, established as a matter of law that the insurance policy was separate property." (citations omitted)).

Further, appellant introduced evidence showing that appellee had a separate property interest in the stock benefits. Appellant also failed to raise the issue when, during her case-in-chief, the trial court indicated how it would determine which of the stock benefits were community and which were appellee's separate property. *See Hernandez v. Hernandez*, 703 S.W.2d 250, 252 (Tex. App.—Corpus Christi 1985, no writ) ("Appellant did not object to the introduction of evidence as

---

[2] *See Tschirhart v. Tschirhart*, 876 S.W.2d 507, 509 n.1 (Tex. App.—Austin 1994, no writ) ("Like pleadings, however, inventories may constitute judicial admissions.").

to the character and nature of the house and lot. The issue, then, was tried by consent, and shall be treated as if it had been raised in the pleadings."); *see also Musick*, 650 S.W.2d at 769 (noting further indication of waiver of reliance on the defendant's purported judicial admission where the plaintiff introduced evidence contradicting the judicial admission).

Appellant argues that "one of the most contentious issues was the trial court's determination of separate property stock rights" and valuation of the stock benefits. However, there is no indication in the record that there was any dispute between the parties as to the value or the calculation of either the community interest or appellee's separate property interest in the stock benefits. Appellant made no indication to the trial court regarding appellee's judicial admission that all of the stock benefits were community or the lack of pleadings on the issue of separate property. *See Musick*, 650 S.W.2d at 768–69; *Hernandez*, 703 S.W.2d at 252. While appellee had listed the values of the stock benefits as of certain dates, the parties agreed that because of the stock market fluctuations that the stocks should be considered by "unit" and not by market price. At trial there was no dispute as to how many units were awarded to appellee or when they fully vested. Further, appellant does not indicate where in the trial record there is a dispute of material fact that would require a jury. *See Halsell*, 810 S.W.2d at 372. Because there were no material issues of fact to be decided by a jury, we conclude that even if the trial court abused its discretion in denying the jury, there is no harm.

We overrule appellant's first point of error.

## II. CHARACTERIZATION AND SUFFICIENCY OF THE EVIDENCE

In her second and third issues, appellant argues that the trial court erred in characterizing the stock benefits as separate property and that the evidence was legally and factually insufficient to support the trial court's separate property

characterization on the conclusory testimony of appellee at trial.

## A. General Legal Principles

All property possessed by either spouse during or upon dissolution of the marriage is presumed to be community property. Tex. Fam. Code § 3.003(a). To overcome this presumption, a spouse claiming separate property assets must establish their character by clear and convincing evidence. Tex. Fam Code § 3.003(b). Section 3.007(d) provides that:

> A spouse who is a participant in an employer-provided stock option plan or an employer-provided restricted stock plan has a separate property interest in the options or restricted stock granted to the spouse under the plan as follows:
>
> . . .
>
> (2) if the option or stock was granted to the spouse during the marriage but required continued employment following the date of dissolution of the marriage before the grant could be exercised or the restriction removed, the spouse's separate property interest is equal to the fraction of the option or restricted stock in which:
>
>> (A) the numerator is the period from the date of dissolution of the marriage until the date the grant could be exercised or the restriction removed; and
>>
>> (B) the denominator is the period from the date the option or stock was granted until the date the grant could be exercised or the restriction removed.

Tex. Fam. Code § 3.007(d)(2).

"In a legal sufficiency review of a separate property finding, we examine all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.— Houston [14th Dist.] 2010, pet. denied). If we determine that the evidence is

factually insufficient, we must detail why we have concluded that a reasonable fact finder could not have credited disputed evidence in favor of the finding. *Id.*

## B.     Background

At trial, the parties agreed that the stock options were awarded during the marriage for appellee's employment during the marriage and had not fully vested at the time of trial. The parties agreed as to the dates that the stock options were granted and would fully vest, and the number of stock units awarded. There was no testimony at trial indicating that the stock benefits might have a different vesting schedule than what the parties had indicated in their spreadsheets. Appellee testified that the stock options were all contingent upon his continued employment. Appellant did not present any evidence disputing or contradicting this testimony.

The parties prepared detailed spreadsheets reflecting the stock benefits. These spreadsheets were admitted into evidence at trial. There was no contradictory evidence admitted at trial as to the amount of the awards, the dates of the awards, or the vesting schedules. In her testimony, appellant agreed that not all of the stock benefits had vested and only requested an award of a percentage of the vested units. In discussing one of the stock benefits, appellant testified:

> [Appellant's Counsel]: And, so, that results in the amount of 2,066 units that are vested?
>
> [Appellant]: Yes, a[s] of today.
>
> [Appellant's Counsel]: And can be awarded?
>
> [Appellant]: Yes.
>
> [Appellant's Counsel]: With regard to the next item, restricted stock, are those three items under restricted of 1800, 600, 600, were they granted units?
>
> [Appellant]: Yes. Those are the granted units.

9

[Appellant's Counsel]: How much have been earned?

[Appellant]: So, the total units that are vested at this date are the listed 1802 [sic], 442 and 202.

[Appellant's Counsel]: And with regard to those items, are you asking the Court to award all of those to you or some of them?

[Appellant]: I'm asking for a portion of them.

[Appellant's Counsel]: And that's over in the far column where it says wife's proposal?

[Appellant]: Yes.

In "wife's proposal," appellant proposed that the trial court award her sixty percent of the vested units and award appellee forty percent of the vested units. The trial court obliged and divided the stock benefits as appellant proposed.

## C.    Analysis

Appellant argues that under the Family Code the trial court was required to divide all of the stock options that were awarded during the marriage, including the unvested units, as community property but failed to do so. Appellant argues that the trial court failed to divide approximately forty percent of the stock units granted during the marriage and instead determined that those units were appellee's separate property. Appellant argues that these types of benefits are considered community property under Texas case law and cites to many appellate cases.[3] Notably, each of these cases was decided prior to the enactment of section 3.007(d), which was added to the Family Code in 2009.

Section 3.007(d) provides how to calculate which portion of such stock options, if any, are separate property. *See* Tex. Fam. Code § 3.007(d). If the stock

---

[3] *See Boyd v. Boyd*, 67 S.W.3d 398, 410–12 (Tex. App.—Fort Worth 2002, no pet.); *Kline v. Kline*, 17 S.W.3d 445, 446 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *Charriere v. Charriere*, 7 S.W.3d 217, 220 (Tex. App.—Dallas 1999, no pet.); *Bodin v. Bodin*, 955 S.W.2d 380, 381 (Tex. App.—San Antonio 1997, no pet.); *Demler v. Demler*, 836 S.W.2d 696 (Tex. App.—Dallas 1992, no writ).

options were granted during the marriage and, before being able to fully exercise the option, require continued employment after divorce, then the separate property interest is determined through the equation detailed therein. *See id.* § 3.007(d)(2). Appellant has not addressed why section 3.007(d) does not apply to this case or how the trial court's application of section 3.007(d) was error, other than to argue that appellee judicially admitted that the stock options were community property.

Appellant argues that appellee judicially admitted that there was no separate property at issue in the divorce. However, as analyzed above, appellant failed to protect the judicial admission by admitting evidence contrary to the admission, failing to object to the admission of evidence contrary to the admission, and trying the issue by consent. Appellant attempts to avoid this result by citing to *Dutton v. Dutton*, 18 S.W.3d 849, 853–54 (Tex. App.—Eastland 2000, pet. denied), *Roosevelt v. Roosevelt*, 699 S.W.2d 372, 374 (Tex. App.—El Paso 1985, writ dism'd), and *Russell v. Russell*, No. 01-04-00984-CV, 2006 WL 241476 (Tex. App.—Houston [1st Dist.] Feb. 2, 2006, no pet.). These cases are distinguishable to the facts herein.

In *Dutton*, the husband characterized property as community in a sworn inventory filed with the trial court and "clearly regarded the property as community property when he testified at trial. He even requested the trial court to divide the property between him and [the wife]." *Dutton*, 18 S.W.3d at 855. Appellee did not make such a concession in his testimony and instead testified to the separate character of the employment benefits without objection. Appellee testified that he had showed how many units were vested as of the date of trial and confirmed his and appellant's vested amounts were all the same, except for one option.[4] Both parties requested that the trial court divide only the vested units.

---

[4] For this option, appellant had it listed as fully vested while appellee listed it as only

Appellee testified that the awards required his continued employment with his current employer, or they would terminate. Unlike the evidence presented in *Dutton*, this evidence compels the legal conclusion that a portion of the stock options were appellee's separate property.

In *Roosevelt*, "no evidence was offered to establish that [certain items] listed as community property [in the inventory] were in fact separate property, and such evidence would not have been admissible, with a proper objection, in view of the judicial admission that those listed items were community property." *Roosevelt*, 699 S.W.2d at 374. As detailed above, evidence of the separate character of the stock options was admitted without objection.

In *Russell*, the wife admitted in her inventory that certain items were the husband's separate property. *Russell*, 2006 WL 241476 at *2. At trial, the wife "admitted that the [car] was [husband's] separate property during her testimony and implicitly gave her agreement to the classification of the other property at issue as [husband's] separate property when she testified as to how the trial court should make its just and right division of the estate." *Id.* at *3. The trial court characterized the car as community property and the husband appealed. *Id*. at *2. The court concluded that wife was estopped from challenging her characterization of the car. *Id*. at *3. Unlike in *Russell,* in this case at trial both parties presented evidence of the separate character of the stock benefits.

Appellant next argues that even if there was no judicial admission, appellee failed to meet his burden to show by clear and convincing evidence that the stock options awarded as separate property were his separate property. Specifically, appellant argues that appellee's testimony about the nature and characterization of

---

84% vested. In the decree, the trial court divided 100% of the shares between the parties, thus agreeing with appellant that the option had fully vested and was community property.

the stock grants was conclusory because it was unsupported by documentary evidence detailing the restrictions and vesting schedule on the awarded stock options. *See Graves v. Tomlinson*, 329 S.W.3d 128, 140 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Here both parties submitted detailed spreadsheets detailing the stocks awarded and their vesting schedules. Thus, the separate property characterization was not supported solely by the unsupported testimony of one party like in *Graves*.

There was legally and factually sufficient evidence to support the trial court's award of separate property to appellee. We overrule appellant's second and third issues.

## III. SEVERANCE OF DIVORCE AND DIVISION OF COMMUNITY ESTATE

In appellant's fourth issue she argues that the trial court erred because it severed the date of the divorce from the division of the community estate. Appellant argues that the trial court erred in not considering any gains in the community estate from February 12, 2019 to April 25, 2019, and further erred by not considering any gains between February 12 and October 18, 2019.

## A. General Legal Principles

"A judgment routinely goes through three stages: (1) rendition, (2) signing, and (3) entry." *Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex. App.—Waco 2004, no pet.). Rendition is "the judicial act by which the court settles and declares the decision of the law upon the matters at issue." *Genesis Prod. Co. v. Smith Big Oil Corp.*, 454 S.W.3d 655, 659 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A judgment is rendered when the trial court officially announces its decision—either in open court or by written memorandum filed with the clerk—on the matter submitted for adjudication." *Wittau*, 145 S.W.3d at 735 (citing *S&A Rest. Corp. v.*

13

*Leal*, 892 S.W.2d 855, 857 (Tex. 1995)).  If the trial court signs a judgment without first making a pronouncement in open court, then the act of signing the judgment is the official act of rendering judgment.  *Id.*

Severance may only be had when a lawsuit may be divided into two or more *independent* causes, each of which terminates in a separate, final and enforceable judgment.  *Vautrain v. Vautrain*, 646 S.W.2d 309, 314 (Tex. App.—Fort Worth 1983, writ dism'd) (citing Tex. R. Civ. P. 41).  "That portion of a divorce suit regarding property rights between the parties is a part of the very divorce suit itself."  *Id.* (citing *Burguieres v. Farrell*, 126 Tex. 209, 87 S.W.2d 463 (Tex. 1935)).  Thus it cannot be severed from the divorce action under Rule 41.  *Id.*  The Family Code provides for mandatory division of property in a divorce action.  *See* Tex. Fam. Code § 7.001; *Hailey v. Hailey*, 331 S.W.2d 299 (Tex. 1960).

In the event that a trial court seeks to grant a partial new trial on certain property issues, it must either grant a new trial on all issues since they may not be severed, or treat the order granting a divorce as interlocutory and proceed to consider the property issues, or what remains of them, on new trial.  *Vautrain*, 646 S.W.2d at 315.  The trial court may, however, separate some of the issues and grant a partial new trial on certain property issues.  *Id.*  However, granting a partial new trial on the property issues renders the divorce interlocutory and until the disposition of all issues, the parties remain married.  *See Gathe v. Gathe*, 376 S.W.3d 308, 315 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Vautrain*, 646 S.W.2d at 316.

We review a trial court's division of property for an abuse of discretion. *Quijano v. Quijano*, 347 S.W.3d 345, 349 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  A trial court has wide discretion in making a just and right division.  *Id.* To overturn the trial court's division, the appellant must show that the trial court's

division was manifestly unjust and unfair. *Id*. The assets of the community estate are determined as close to the date of divorce as possible. *Id*.

**B.    Background**

On February 12, 2019, a few days after the trial concluded, the trial court rendered an order dividing the community property and granting the divorce. The parties filed motions to clarify and for reconsideration, and the trial court conducted a hearing to consider the arguments of the parties. In her motion for clarification and reconsideration, with regard to the stock options, appellant asked the trial court to reconsider the number of vested units overall awarded by the trial court. "Wife's value shows 489 vested units, Husbands (sic) Value shows 494 Vested units, court values vested units at 426 units."

At a hearing in April, the parties stipulated to most of the values at issue on reconsideration, save a few exceptions. At this hearing, appellant's attorney calculated the percentage of stock to be awarded under section 3.007 as of February 2019. During the hearing, appellant raised an issue with regard to a stock option that was awarded on February 5, 2019 and was not divided in the court's rendition on February 12. Appellant argued that "400 shares were awarded and if you run that out on a vesting schedule, it would be approximately 35 shares of community that weren't considered." There was brief discussion about the calculation of the community interest where the trial court responded "the remainder is his separate" and appellant's counsel indicated that the trial court was correct. Appellant's counsel argued for additional stock options, options awarded to appellee after the trial but prior to the February 12 rendition, to be awarded to appellant. Appellant also argued that certain assets were awarded to appellee by default as separate property and that "[w]e don't believe it was the Court's intent to do it since these grants were clearly contained property in them and there was no

15

tracing or vesting scheduled." Appellant argued that she never received documents from appellee's employer that detailed the vesting schedule for the stock options. At the end of the hearing on the motions to clarify and reconsider the trial court took the matters under advisement.

On April 25, 2019, the trial court rendered a new order dividing the community property, stating "Div. granted 2/12/2019 on ground of insupportability. This order clarifies and reconsiders the 2/12/2019 property division." The April order added additional community property that was not previously divided in the February order. The April order also indicated that appellant's attorney was to prepare the decree and set for entry at a later date.

In October, the trial court held a hearing on the entry of the final divorce decree. The trial court signed the final divorce decree stating that the parties "are divorced and that the marriage between them is dissolved on the ground of insupportability." The divorce decree listed the property divided between the parties and also made an award of separate property to appellee of the stock units not divided between the parties.

Appellant filed a motion for new trial supported by appellant's declaration. Appellant's motion for new trial was denied by operation of law.

C.    Analysis

Appellant argues that because the trial court reconsidered the division of the community estate in April, the trial court should have also considered the accumulation of assets and rights in the community estate between February and April. Appellant argues that the trial court further erred by incorporating the April division into the final divorce decree in October without considering the accumulation of assets and rights in the community estate between February and

October. Appellee argues that the trial court did not abuse its discretion by using values of the community estate from February because that is the evidence the trial court had before it and appellant has not shown the division was manifestly unjust or unfair.

Even if we assume without deciding that the trial court effectively granted a new trial in entering the final divorce decree in October[5] and the parties were not divorced until that time, the fact that the trial court used the February values does not necessarily render the trial court's division of the community estate manifestly unjust and unfair. *See Quijano*, 347 S.W.3d at 350 ("The six-month gap by itself did not render the evidence insufficient to support the trial court's assessment of value in the [account] and did not render the court's division of property manifestly unjust and unfair."). Neither in her brief, nor in her motion for new trial, did appellant attempt to detail how the division was manifestly unjust or unfair based on the trial court's use of the February values as opposed to the October or April values. *See In re Marriage of Harrison*, 557 S.W.3d 99, 141 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("[W]e need not reverse a trial court's division of property when the party claiming a mischaracterization fails to show how the erroneous characterization of community property as separate property caused the trial court to abuse its discretion in dividing the marital estate."); *Lynch v. Lynch*, 540 S.W.3d 107, 133 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("[Husband] has not attempted to show how the erroneous characterization of community property as separate property, during the four month period preceding their divorce . . ., caused the trial court to abuse its discretion in the overall division of the community estate; nor did he show that the mischaracterization had more

---

[5] Neither party argues that the trial court granted an additional motion for reconsideration in October. Unlike the April reconsideration, neither party contends that the trial court changed the property division prior to entry of the final divorce decree.

17

than a de minimus effect on a just and right division of the community estate."). Appellant did not present evidence of the value of any alleged increase in the community estate between February and April or February and October. In her November motion for new trial, appellant neither provided evidence of any increases, nor detailed which assets allegedly increased between February and April or February and October.[6] In her motion for new trial, appellant alleged that the trial court failed to account for "significant assets attributable to the community estate, including but not limited to payments, stock, options, performance shares, restricted stock units and bonuses and retirement rights and benefits made and received by [appellee] or vested with subsequent to the close of the evidence" but there is no indication of the value of these alleged increases to the community. Appellant further alleged that such assets were not of "*de minimus* value." In her affidavit attached to her motion for new trial, appellant did not indicate what "significant assets" the trial court had failed to account for and how they were not of "*de minimus* value."

Because appellant has not shown that the division of assets was manifestly unjust or unfair, we cannot say that the trial court abused its discretion. We overrule appellant's fourth issue.

## IV.   RESERVATION OF INTEREST IN REAL PROPERTY

In her last issue, appellant argues that the trial court erred in "requiring a real property deed reserving a mineral interest to [appellee] where the entirety of the real property had been awarded to [appellant] without reservation." Appellee concedes this point. Both parties request that this court modify the deed to reflect

---

[6] In her brief appellant alleges that the "April 25 rendition did not account for hundreds of thousands of dollars and stock grants that has been granted to [appellee] (for work done during the marriage) just 9 days after the trial had concluded." These alleged facts are not supported by evidence in the record.

that appellant is awarded the real property without any reservation of the mineral interest to appellee. Neither party contends that this error affects the "just and right" division of the community estate, just that the trial court committed an error in carrying out its ruling. We have the power to modify incorrect judgments when the necessary information is available for us to do so. *See* Tex. R. App. P. 43.2(b); *Mullin v. Mullins*, 202 S.W.3d 869, 879–80 (Tex. App.—Dallas 2006, pet. denied). We modify the deed to appellant, striking the following language in the deed: "Grantor reserves all oil, gas, and other minerals in and under and that may be produced from the property."

We sustain appellant's final issue and modify the judgment accordingly.

## V.    CONCLUSION

Having modified the language in the deed and overruled appellant's remaining issues, we affirm the judgment of the trial court as modified.

/s/    Ken Wise
Justice

Panel consists of Justices Wise, Bourliot, and Zimmerer.